## CAPLEN OIL CO., Inc., v. HUMBLE OIL & REFINING CO. et al.

### Civil Action No. 390.

District Court, S. D. Texas, Houston Division.

Jan. 9, 1947.

Stewart, Burgess & Morris, of Houston, Tex. (by W. Carloss Morris, Jr., of Houston, Tex., and W. Clint Little, of Austin, Tex., for plaintiff.

Baker, Botts, Andrews & Walne, of Houston, Tex. (by Dillon Anderson and Hugh Patterson, both of Houston, Tex.), Murfee, Rowland & Crystal, of Houston, Tex. (by Jack Rowland and Melvin Crystal, both of Houston, Tex.), F. Warren Hicks, of Houston, Tex., R. H. Jones, of Livingston, Tex., and Grover C. Lowe, of Woodville, Tex., for defendants.

KENNERLY, District Judge.

This is a suit by plaintiff against three groups of defendants, to recover title and possession of the C. J. O'Conner 320-acre Survey, Abstract No. 463, situated in Polk County, Texas, in this District and Division. The groups of defendants are as follows:

(a) The O'Conner Group.

(b) The Smith Group.

(c) The Carter & Davis Group. .

Plaintiff offers and stands upon what it claims to be, and which I find to be (except as herein stated), a regular chain of record title under a Patent from the State of Texas to C. J. O'Conner. The O'Conner Group and the Smith Group claim under the same chain of title, but the O'Conner Group insists that an undivided one-third interest in such Survey, owned by Mrs. Annie E. Windsor, did not pass to plaintiff, but is owned by them. And the Smith Group insists that they own the south half of such Survey under a deed from one of the persons in plaintiff's chain of title.

The Carter & Davis Groups offer a tax collector's deed, dated July 6, 1880, to James E. Hill and George W. Davis, by which they claim to connect with the same chain of title. They also claim title under the Texas Ten and Five Year Statutes of Limitation.

1. Taking up the title of the O'Conner Group.

The C. J. O'Conner Survey of 320 acres involved herein was patented to C. J. O'Conner April 17, 1848. O'Conner left three children. Two of the children and/or their heirs died, and the other child, his daughter, Eliza O'Conner Rudder, took title, and had at the time of her death title, to the entire survey. Mrs. Rudder left three children, and John A. Caplen without doubt acquired the title of two of them. The question is presented of whether Caplen acquired the title of the other one, i. e., Mrs. Annie E. Windsor. If he did not, then her interest (an undivided one-third) is owned by the O'Conner Group.

The facts are these:

Mrs. Windsor was on July 5, 1902, a married woman, the wife of J. D. Windsor. He was at that time in California and she in Texas. Her interest in the 320 acres was her separate property. On that date, Mrs. Windsor, her sister and her brother executed and duly acknowledged and delivered to John A. Caplen a deed covering the 320 acres in question, but her husband J. D. Windsor did not sign nor acknowledge the Deed.[1] But J. D. Windsor did on August 16, 1902, execute and duly acknowledge and deliver to John A. Caplen a deed[2] for

[1] This Deed, omitting formal parts and description, is as follows:—

"Know all men by these presents, that we, Chas. J. Rudder, and Tom F. Schooley, and Maggie Gertrude Schooley, and Annie E. Windsor of the County of Burnet, State of Texas, for and in consideration of the sum of Ten Dollars and other valuable consideration—Dollars, to us in hand paid by John A. Caplen, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said John A. Caplen, of the County of Galveston, State of Texas, all that certain tract and parcel of land lying and being situated in Polk County, Texas, described as follows:
*	*	*	*	*	*	*
To have and to hold the above described premises, together with all and singular

the rights and appurtenances thereto in anywise belonging unto the said John A. Caplen, heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend, all and singular the said premises unto the said John A. Caplen, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

[2] This Deed, omitting formal parts and description, is as follows:—

"Know all men by these presents, that I, J. D. Windsor, husband of Annie E. Windsor, nee Rudder, of the County of San Bernardino, State of California, for and in consideration of the sum of Ten Dollars and other valuable consideration, —dollars to us in hand paid by John A. Caplen, have granted, sold and conveyed,

said property. The question for decision is whether these two deeds satisfied the Texas Statute, now Article 1299, Vernon's Civil Statutes and Amendments [3] requiring the husband and wife to join in the conveyance of real estate which is her separate property.

■ The wording of the two deeds indicates that it was the intention of both the husband and wife to move under the statute and to convey the land to Caplen. I think that under the weight of authorities in Texas, Mrs. Windsor's title passed to Caplen, giving him record title to the entire Survey. Nolan v. Moore, 96 Tex. 341, 72 S.W. 583, 97 Am.St.Rep. 911; Halbert v. Hendrix, Tex.Civ.App., 26 S.W. 911, 912. Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552, 554; Rogers v. Roberts, 13 Tex.Civ.App. 190, 35 S.W. 76, 77.

This disposes of the claim of the O'Conner Group.

2. Coming now to the claim of the Smith Group.

On January 22, 1903, John A. Caplen executed to C. C. Smith a deed purporting to convey to Smith *"the Western or Southern one-half of the C. J. O'Conner Survey of three hundred and twenty acres of land. Said C. C. Smith to have the choice of either the Western or Southern half of said tract of land."* [4]

■ The weight of the evidence here is that C. C. Smith did not during his lifetime select either the south half or the west half of the survey, but that such selection was made by his legal representatives October 22, 1937. Under the wording of the deed from Caplen to Smith, I do not think that the right of the Smiths to make such selection became by lapse of time stale demand as plaintiff contends. In Dull v. Blum, 68 Tex. 299, 4 S.W. 489, 490, upon which plaintiff strongly relies, one Fairchild held under a deed bearing only some slight similarity to the deed here. There was a provision that in the event Fairchild became dissatisfied with his purchase, Foster, his grantor, was to "receive back the same" and return Fairchild's purchase money. This seems to have influenced the conclusion reached by the Court. It closes with the words "Under these circumstances, we

and by these presents do grant, sell and convey, unto the said John A. Caplen of the county of Galveston, State of Texas, all that certain tract and parcel of land lying and being situated in Polk County, Texas, described as follows:
\* \* \* \* \* \* \*
To Have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said John A. Caplen, heirs and assigns forever; and I do hereby bind myself, my heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said John A. Caplen, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

[3] Article 1299 is as follows:—
"The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded, and certified to in the mode pointed out in articles 6605 and 6608."

[4] This Deed, omitting formal parts and description is as follows:
"Know all men by these presents that I, John A. Caplen of the County of Galveston, in the State aforesaid, for and in consideration of the sum of five hundred cash dollars to me paid by C. C. Smith, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said C. C. Smith of the County of Grimes, State of Texas, all that certain tract and parcel of land lying and being situated in Polk County, Texas, and being the Western or Southern one-half of the C. J. O'Conner Survey of three hundred and twenty acres of land. Said C. C. Smith to have the choice of either the Western or Southern half of said tract of land.
\* \* \* \* \* \*
To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said C. C. Smith, heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend, all and singular the said premises unto the said C. C. Smith, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

think it may reasonably be presumed that Fairchild had become dissatisfied and had demanded and received his money back, as the contract gave him a right to do."

Here, the deed from Caplen to Smith has all the earmarks of a present conveyance, except that Smith had the right to say whether he would take the south half or the west half of the survey. I am convinced that as between plaintiff and the Smith Group, the Smith Group has title to the south half of the survey.

3. This brings us now to the claim of the Carter & Davis Groups.

■ They claim under a deed, dated July 6, 1880,[5] from the Tax Collector of Polk County, Texas, where the land is situated, to James E. Hill and George W. Davis (for brevity called Hill & Davis). It recites the failure of the owners of the record title to pay the taxes on the property for the year 1879, etc. In the absence of proof of the necessary steps to empower the Tax Collector to make such sale, this

---

[5] Such Deed, omitting formal parts, is as follows:

"The State of Texas

"County of Polk

"Know all men by these presents:

"That Whereas, certain taxes are due the State of Texas, and the County of Polk by the unknown owner of owners of the land hereinafter described as assessed against them for the year 1879 upon the following described tract or parcel of land, viz.:

"Three hundred and twenty acres of land situated in Polk County, State of Texas described in the official abstract of land titles of said State thus: Abstract 463 new; Certificate 2540; Patentee C. J. O'Conner; 320 acres Bounty; Patented 15 April 1848; Patent No. 50; Volume 5; Old Abstract 354, which taxes amounted to the sum of One Dollar and Twenty Cents as appears from the Tax Roll of said County, for the year 1879.

"And Whereas, the time provided by law for the payment of said Taxes having expired, and though demanded of the said unknown owners by proper legal notice, the same remaining unpaid, I, M. A. Dunnam, Tax Collector of Polk County, in compliance with the law, and by virtue of the Tax Roll aforesaid, levied upon and seized said tract of land, as belonging to the said unknown owners and being hereafter described to be sold to make the said amount of said taxes yet unpaid, together with costs accrued, and have advertised the said lands in the manner and for the time required by law; and

Whereas, in pursuance with the said advertisement, I did offer said lands for sale at public auction, at the time, place and in the manner required by law, when George W. Davis and James E. Hill bid the sum of Five Dollars and Seventy cents for 320 acres of said land, which sum, being the sufficient to make the said amount of said unpaid taxes, together with —— dollars and —— cents, costs accrued thereon, and the costs of this Deed, which being the highest and best bid offered for the least number of acres of said land, the same was struck off to them, the said George W. Davis and James E. Hill.

"Now, therefore, for and in consideration of the sum of Five Dollars and Seventy Cents, to me in hand paid, the receipt of which I hereby acknowledge; I have by virtue of the power in me vested by law, and by these presents, have bargained, sold, transferred and conveyed, and by these presents do bargain, sell, transfer and convey unto them the said George W. Davis and James E. Hill, their heirs and assigns, all the right, title, interest and estate which the said unknown owner or owners had at the time when the assessment before mentioned was made, to the following to the following described tract or parcel of land, viz.:

"The Hundred and twenty acres of land situated in Polk County, Texas, hereinbefore described to which description reference is here now made and for the filed notes to the land here conveyed reference is made to Patent No. 50, Volume 5, issued by the State of Texas to C. J. O'Conner on the 15th day of April, 1848 for which reference is further made to the Records of the General Land Office of the State of Texas.

"To have and to hold unto them, the said George W. Davis and James E. Hill, their heirs and assigns the above and foregoing tract of land, together with all and singular, the rights, privileges and appurtenances to the same belonging or in anywise appertaining in fee simple forever, Provided, nevertheless, that the said land herein conveyed may be redeemed by the said unknown owner or owners (owner) or by their heirs or their legal representatives within two years from this date, in the manner provided by law. 'Said' written in red ink before signing."

deed itself passes no title to Hill & Davis, under whom the Carter & Davis Groups claim. But under the Texas decisions, it may be used, and the Carter & Davis Groups use it, as the basis of their claim under a deed under the Texas Five Year Statute of Limitation.[6] Wofford v. McKinna, 23 Tex. 36, 76 Am.Dec. 53; Davis v. Hurst, Tex. Sup., 14 S.W. 610. Davis v. Howe, Tex.Com.App., 213 S.W. 609. They also use it to show the extent of their claim under the Texas Ten Year Statute of Limitation.[7] Temple Lumber Co. v. Mackechney, Tex.Com.App., 228 S.W. 177, 178.

Both the Five and the Ten Years Statutes of Limitation require *claim* by a limitation claimant. The evidence shows claim by Hill & Davis and those claiming under them, including the Carter & Davis Groups, from the date of the tax deed, certainly from January 1885, down to the time of this trial. Their claim has been active and has been hostile and adverse to the claim of plaintiff and those composing the O'Conner and Smith Groups, and to all others.

Such statutes also require peaceable and adverse possession. The evidence shows peaceable and adverse possession of the survey by Hill & Davis and those claiming under them during the years beginning January 1, 1886, down to and including the year 1913.

It is shown that Irvin Dowden moved on this land in 1883 or 1884, opened a field and cultivated same, and that later a relative of Irvin Dowden built a a small house thereon. Irvin Dowden acknowledged tenancy to James E. Hill February 13, 1886, as of January 1, 1886, and remained on the land as tenant of Hill & Davis until about 1892, when he turned over possession thereof to L. H. Overstreet. Overstreet entered by consent of Dowden and probably by consent of Hill & Davis. He afterwards formally acknowledged tenancy to Hill & Davis. He remained on the land as tenant of Hill & Davis until sometime in 1893. He in the meantime made other improvements. There was no break between the possession of Dowden and the possession of Overstreet.

Overstreet moved off the land sometime in 1893 and returned sometime in 1897. The land was continuously occupied, however, during the absence therefrom of Overstreet, and while there is some dispute about who occupied it during such absence, the evidence, when considered as a whole, convinces me, and I find that those who did occupy it, did so by permission of Dowden and/or Overstreet, as tenants of Hill & Davis.

Overstreet returned to the land in 1897, and remained there, making some improvements and holding under Hill & Davis, until he moved away sometime in 1914.

There was no break in the occupancy of the land from the time Dowden first went

---

[6] Article 5509 of Vernon's Texas Civil Statutes is as follows:

"Every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after cause of action shall have accrued, and not afterward. This article shall not apply to one in possession of land, who deraigns title through a forged deed. And no one claiming under a forged deed, or deed executed under a forged power of attorney shall be allowed the benefits of this article."

[7] Article 5510 of Vernon's Texas Civil Statutes is as follows:

"Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. The peaceable and adverse possession contemplated in this article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually enclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument."

there in 1883 or 1884 and the time Overstreet moved away sometime in 1914. After Overstreet moved away, it was occupied from time to time by W. T. Carter & Brothers, who at various times cut timber therefrom. The occupancy and claim of Hill & Davis and these claiming under them have been at all times peaceable, and adverse and hostile to the claim of the plaintiff and the O'Conner and Smith Groups, and all others.

■ My conclusion is that long prior to the filing of this suit, the Carter & Davis Groups matured title to the entire survey [8] under the Texas Ten Year Statute of Limitation.

The Texas Five Year Statute of Limitation makes the same requirement of a limitation claimant as to claim, occupancy, etc., as is made by the Ten Year Statute. It in addition requires that a limitation claimant shall hold under a deed or deeds duly registered. The evidence shows that the deed from the Tax Collector to Hill & Davis was duly filed for record August 24, 1880, and soon thereafter recorded or registered on the Deed Records of Polk County, in which the land is situated.

Such Five Year Statute also requires that a limitation claimant shall pay all taxes thereon before such taxes become delinquent. The evidence shows the payment by Hill & Davis of all taxes on this property for the years 1885 to 1893, inclusive, and with the exception of the years 1885 and 1886 shows that such taxes were paid before they became delinquent.[9] It is not certain that the taxes for 1885 and 1886 were paid before they became delinquent, although they probably were.

■ Thus it appears that by reason of the occupancy of Dowden and the first occupancy of Overstreet, Hill & Davis had five years possession, with registered deed and payment of taxes, maturing title in them under the Five Year Statute.

It is probably true that other periods of possession for five years, with registered deed and payment of taxes, are shown between the time Dowden acknowledged tenancy January 1, 1886, and the time Overstreet moved off in 1914, but it is not necessary to discuss them.

■ 4. But the Smith Group says that since they have owned the south half of the survey since 1903 or 1904, and the improvements, etc., which were the basis of the limitation claim of Hill & Davis, were not on the south half, that limitation did not run against them. The answer to this contention is that the limitation title of Hill & Davis, and those claiming under them, to the entire survey was matured long before January 22, 1903, when John A. Caplen made his Deed to C. C. Smith, and long before October 22, 1937, when the Smiths selected the south half of the survey. Besides, I think it is settled in Texas that Hill & Davis under both the Ten Year and the Five Year Statutes of Limitation, held to the bounds of their Tax Deed.

From what has been said, it follows that judgment should be rendered for the defendants, the Carter & Davis Group, and it will be so ordered. Let proper decree be prepared and presented.

---

[8] Article 5513 of Vernon's Texas Civil Statutes is as follows:

"Whenever an action for the recovery of real estate is barred by any provision of this title, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims."

[9] The Certificate of Eva Rowe, Tax Assessor and Collector of Polk County, is as follows:

"This is to certify that I, Eva Rowe, tax assessor and collector of Polk County, Texas, after a diligent search of the Tax Rolls and Delinquent Tax Records of Polk County, Texas, as well as the Delinquent Tax Receipt Books of said County, of all of which I have legal custody and am the lawful possessor, have found no entry in any of said rolls, record or receipt books showing that any taxes on the C. J. O'Conner Survey, Abstract No. 463, 320 acres, in Polk County, Texas, rendered by James E. Hill and George W. Davis, jointly for the years 1887 to 1893, inclusive, were listed as delinquent or that any delinquent receipt was issued thereon."

There is a similar Certificate by the State Comptroller.